WILLIAM S. PROUDFOOT

*v.*

JOHN WIGHTMAN.

1. AGENCY—*proof of parol authority to sell land.* While it may be true, that parol authority may be sufficient to constitute an agency for the sale of real estate, yet if a purchaser relies upon such authority, and seeks to enforce the contract, the proof to establish the power of the agent must be clear, certain and specific. A bare preponderance of the evidence will not be sufficient.

2. DEGREE OF PROOF. In an ordinary chancery case, the complainant must establish the material allegations of his bill by a preponderance of the evidence; but on bill for the specific performance of a contract for the sale of land made by an agent under a parol authority, the burden of proof is thrown upon the complainant to establish the power by something more than a bare preponderance of evidence.

3. SPECIFIC PERFORMANCE—*refused for unfairness.* Where an application is made to a court of equity to decree the specific performance of a contract, if it appears the contract is unfair, unjust, or dishonest, the court will not lend its aid to compel its performance.

4. SAME—*fraudulent conduct of agent.* If an agent authorized to sell land at a given price, three years after, when the value has greatly advanced and is rapidly rising, sells the same at the price named, and at a great sacrifice, without informing his principal of the rise in value, this will be such a fraud upon the principal, as that a court of equity may refuse to enforce a conveyance to the purchaser.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. J. W. WAUGHOP, for the appellant.

Messrs. PERKINS & TRUMAN, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by William Proudfoot, in the Superior Court of Cook county, against John Wightman, to enforce the specific performance of an alleged contract for the sale of two five acre lots, in the county of Cook. Upon the hearing, the court entered a decree dismissing the bill for want of equity, to reverse which the complainant in the bill has prosecuted this appeal.

The contract upon which appellant relies, was executed on the 13th day of February, 1868, and was in the following language :

"Received of William S. Proudfoot $10, part pay on purchase of ten acres of land, to-wit: Lots 7 and 8, in F. Harding's subdiv. of W. ½ of N. W. ¼ of section 11, town. 39, range 13 E., 3d P. M., this day sold the said Proudfoot, for the sum of $150 per acre, to be paid in cash by said Proudfoot, upon the delivery to him or his legal assigns of a warranty deed to the said property, after title to same has been shown good of abstract.

"Dated, Chicago, this 13th day of February, 1868.

"JOHN WIGHTMAN,
"*Per* D. H. Horne."

As appears upon the face of the contract, it was not executed by appellee in person, but was executed by Horne, a real estate dealer in Chicago, who claimed to act as appellee's agent.

The defense interposed to the bill was, that Horne was not the agent of appellee, and had no authority to sell the land.

It is not claimed that Horne had any written authority from appellee to sell the property; and while it may be true, as was held in *Taylor* v. *Merrill*, 55 Ill. 52, that parol authority may be sufficient, yet when a purchaser relies upon parol authority of an agent to sell real estate, the proof to establish the power of the agent should be clear, certain and specific.

The important inquiry then is, was Horne empowered by appellee to sell the premises involved in this litigation?

The proof bearing upon this controverted question of fact is narrowed down to the testimony of Horne and appellee.

It appears, from the evidence, that appellee resided in Pekin, Tazewell county; that he purchased the property in 1853, and that in 1856 he sold one of the lots to his brother, who resided in St. Louis.

It is not pretended that appellee ever had but one interview with Horne previous to the alleged sale, and that occurred at Horne's office, in Chicago, about the 7th day of June, 1865.

Horne's version of that interview was, that appellee came into his office, and said he had some land for sale, and gave him the description of it, and his price, which he noted down in a book at the time; that he then asked appellee if he wanted him to sell the property, to which appellee replied, "yes, whenever you can get $150 per acre sell the lots, and write me, and it will be all right."

On the other hand, appellee testified that, while in Chicago, on June 7th, 1865, he was passing an office on Washington street, and noticed some Chicago maps hanging in the office, and called in to inquire the value of his land, and was informed that land in that neighborhood would probably sell

from $200 to $300 per acre, but was not much in demand. He then inquired if it could be leased for enough to pay the taxes, and started to leave, when he was requested to leave a description of the land, which the person in charge of the office copied from his memorandum book. Appellee further testified: "I told him that if any trade offered, he could write either to myself, at Pekin, or my brother, at St. Louis, and I left the office."

It also appears, from appellee's evidence, that this was the only time he spoke to any person in relation to the land during his visit in Chicago.

It does not appear that appellee ever had but the one interview with Horne, nor does it appear that Horne ever paid any taxes upon the land, or assumed any control over it whatever, nor was there any correspondence between appellee and Horne from the time of the interview, in June, 1865, until after the alleged sale, in February, 1868.

The burden of proof to establish every material allegation of the bill, of which the authority of Horne to make the sale was the more important, the law cast upon appellant.

In an ordinary chancery case, a complainant is required to establish the allegations of the bill by a preponderance of the evidence; but in a case of this character, where the title to real estate is attempted to be taken from one and vested in another by a decree in a court of equity, and that, too, by establishing the authority of an agent to make sale by parol, something more than a bare preponderance of evidence should be required. As was said in *Taylor* v. *Merrill, supra,* the proof should be clear and explicit, and not clouded with any uncertainty.

In the record before us, the appellant failed even to establish Horne's authority to sell the premises by a bare preponderance of evidence.

Horne testifies that he had authority; appellee denies it. Horne is interested in sustaining his own act, and getting a

commission; appellee is interested in defeating the sale. The two are so far upon an equality.

Conceding that the two are equally credible, then there is no preponderance in favor of appellant. But the facts and circumstances connected with the transaction, all tend to corroborate appellee.

It is not reasonable to believe appellee would have empowered a person, to him an entire stranger, to sell his lands. In addition to this, the acts of Horne tend to show he was not empowered to sell the land. A period of three years and eight months intervene from the date of Horne's alleged authority and the time he sold, and yet no letter or communication of any kind passed between the principal and agent. It is possible Horne may have had authority and this occurred, but it is so inconsistent with the usual manner in which business men transact business, that it looks incredible.

There is another feature in regard to this transaction, which does not commend it to the favorable consideration of a court of equity.

One witness, who was familiar with the value of real estate in the neighborhood where these premises were situated, testifies that, in the spring of 1868, the property was worth $300 per acre, and in the fall $600; while another witness, who was dealing in real estate, and knew the value, says, as early as February, 1868, the property was worth $500 per acre.

It is apparent, from the evidence, at the time of this pretended sale the land was worth much more than the price for which Horne pretended to sell it, and, in addition to this, it was rapidly rising in the market.

While it is true this fact, of itself, might not defeat the sale, if Horne had been empowered to sell, yet it is a fact calculated to cast suspicion upon the transaction, and proper to be considered as bearing upon the good faith of the acts of Horne.

When an application is made to a court of equity to decree the specific performance of a contract, if it appears the con-

tract is unfair, unjust or dishonest, the court will not lend its aid to compel its performance.

Now, even if Horne had been authorized in 1865 to sell the premises at $150 per acre, and in 1868 the land had increased in value to $500 per acre, it was the plain duty of Horne to notify appellee of the increase before attempting to sell, and if this duty was disregarded, and an attempt made to sacrifice the property, this would be a fraud upon the rights of appellee, which a court of equity could not tolerate.

After a careful examination of the record, we are satisfied the decree of the Superior Court was correct, and it will be affirmed.

*Decree affirmed.*