Rogan v. Arnold.

William A. Rogan, Administrator, v. Katherine D. Arnold.

Gen. No. 13,346.

1. SPECIFIC PERFORMANCE—*when does not lie. Held,* under the facts of this case, that specific performance did not lie to enforce an option to renew a lease.

2. STATUTE OF FRAUDS—*when option to renew lease within.* An option to renew a lease is not valid and binding upon the owner notwithstanding the same is in writing if such option is signed by an agent who had no written authority. Possession under a lease containing such a renewal clause does not give it any additional force.

3. ADMINISTRATION OF ESTATE—*when cannot be had.* Administration of an estate cannot properly be had at the instance of heirs who have settled such estate out of court, paying the debts, etc.

4. ADMINISTRATION ACT—*section 18 construed. Held*, that by virtue of the amendment of 1897 to the Administration Act heirs of a solvent estate are authorized to settle the same without application to a court of probate.

Bill for injunction, etc. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed July 1, 1907.

**Statement by the Court.** This appeal seeks a review and a reversal of the decree of the Superior Court dismissing the bill of appellant for want of equity.

The bill sets forth that one Warren Reifsnider in his lifetime possessed for many years as tenant of Isaac N. Arnold in his lifetime, and by appellee as trustee since his decease, the premises 130 Kinzie street, Chicago, where he maintained a flour storage warehouse. That said Warren Reifsnider in October, 1902, entered into a new lease with appellee, duly executed by her in her own proper person, granting unto him an additional three year term, commencing on May 1, 1903. That said lease among other things contained a covenant that Reifsnider should have the right and privilege of renewing said lease for an additional term of three years upon the same terms as to rent and otherwise as in the original three year term lease. That the lease was delivered to Reifsnider at the time of its execution, and was in his possession at the time of his death, more than six months before the term demised commenced.

Letters of administration were issued to Rogan March 30, 1906, upon the estate of Warren Reifsnider.

The bill further avers that after appellee had been receiving rent under said three year term lease one Henry Hooper, an agent of appellee, obtained possession of the lease from Jesse W. Reifsnider, a son of Warren Reifsnider, and never returned it to him or any one for him, and that Hooper gives it out that he destroyed said lease, and charges that such reten-

tion and destruction was wholly without the consent of the heirs-at-law of Warren Reifsnider and occurred before Rogan's appointment as administrator. That Rogan as administrator notified appellee March 31, 1906, of his right to a renewal of the term for another three years, and that he had elected to renew such term, and requested appellee to make and deliver to him as administrator a proper lease for an additional term of three years upon the same terms as the expiring lease. That he was desirous of tendering to appellee the first month's rent of such new term, and endeavored to do so on April 28, 1906, but was unable to find appellee, or any one acting for her or in her interest, upon whom he could prevail to take or receive the month's rent, and so brings that month's rent into court and again tenders it. That after the service of the foregoing notice, Rogan was notified of the refusal of the appellee to extend the term, and appellee at the same time demanded that possession of the premises be surrendered on April 30, 1906, and warned him that a failure so to do would be met with the institution of an appropriate suit to enforce a surrender. Prays for a specific performance of the alleged covenant of renewal, and that appellee may be decreed to execute a lease to Rogan as administrator, in accordance with the agreement of renewal, and for an injunctional order to preserve the *status quo* pending the determination of the controversy by the court.

Appellee answered, denying that Warren Reifsnider was at the time of his death the owner of the leasehold set forth in the bill, the term of which commenced May 1, 1903, and terminated April 30, 1906, or that appellee ever executed such a lease or delivered one to Warren Reifsnider in October, 1902, preceding his death.

Appellee avers that a lease for three years was executed in her name in January, 1903, by her brother-in-law, Dr. Henry Hooper, and delivered to Jesse W. Reifsnider in the name of Warren Reifsnider, by,

which name he was known and transacted business, but that said lease was executed by said Hooper without right or authority conferred in writing signed by appellee. That the will of her father, in virtue of which she acted, conferred upon her no power to execute a term lease of that length of time. Invokes the Statute of Frauds as a defense to said three year lease executed by Hooper in her name, and insists that the same is void and of no effect. That Jesse W. Reifsnider, being dissatisfied with the lease executed by Hooper without authority of appellee in writing, in October, 1904, surrendered that lease to Hooper, who in its place had Jesse W. in the name of W. Reifsnider, execute a lease in duplicate, both being signed under seal by appellee, dated October 18, 1904, and being for a term ending April 30, 1906, and delivered one of them executed by both parties to him. Jesse W. accepted this lease. In it there was no covenant for renewal. That notwithstanding Reifsnider had no right to demand an additional term after April 30, 1906, appellee, in recognition of the fact that he and his father had been tenants of the premises for many years, gave him an opportunity to accept of a new term at a rental of $4,000 per annum, although the fair rental value was $4,500, but he refused such offer and pretended that he was entitled to a renewal for three years at the then existing yearly rental of $3,500.

Rogan & Stevens, for appellant; John S. Stevens, of counsel.

Hamlin & Boyden, for appellee; Louis M. Greeley, of counsel.

Mr. Justice Holdom delivered the opinion of the court.

The crucial and important question here is the defense of the Statute of Frauds, and underlying that the effect of the acceptance and retention by Jesse

W. Reifsnider of the lease of October 18, 1904, ending April 30, 1906, and also the legal effect of the voluntary administration of the estate of Warren Reifsnider by his widow and heir at law.

It is of the utmost importance to scrutinize the evidence to ascertain its bearing upon the manner of the execution of the lease claimed to have been in the possession of Warren Reifsnider at his death. Jesse W. Reifsnider in his examination in chief testified that he wrote his father's signature at the latter's request, and that Mrs. Arnold wrote the other signature (R. p. 51), but on cross-examination he admits that he had before that time testified in a forcible detainer suit involving the possession of the same premises here in controversy, that Dr. Hooper signed the lease for Miss Arnold. This witness admits that the option covenant for extension of the term was inserted by Dr. Hooper after the lease was executed in the name of appellee and out of her presence and without her knowledge. Thomas Harris, an employe of H. O. Stone & Co., produced by appellant, testified that he had the disputed lease in his possession, but did not remember whether it was signed by appellee or by some one as her agent. John Lester Adams, another employe of H. O. Stone & Co., produced by appellant, swore that he thought the disputed lease was signed, "Katherine Arnold by Dr. Hooper." (R. p. 89.)

From the foregoing it is evident there is no proof even remotely tending to establish the contention that the lease was either executed by appellee or by Dr. Hooper under written authority from her.

We think it not inopportune to here repeat the quaint and correct view expressed by the learned chancellor, the late Judge Gary, in deciding this case:

The Court: "There is a pinch in your case. They have set up the Statute of Frauds in their answer, haven't they?"

Counsel for Appellant: "Yes."

The Court: "And the young man—meaning Jesse

W. Reifsnider—says that Dr. Hooper wrote in the provision—referring to the option for renewal—and then put his initials under Miss Arnold's signature. You have not shown that Hooper had any authority that would be sufficient under the Statute of Frauds, * * * there is nothing to show that she ever knew anything about the option being in the lease, because young Reifsnider says that Hooper wrote these words about the option in, and then put his initials under Miss Arnold's signature. (R. pp. 79 and 80.) * * * Hooper having no authority to make such an agreement under the Statute of Frauds, and she not being charged with personal knowledge that he had made such an agreement, there is nothing to affect her conscience by way of estoppel. You have nothing to rely on except the naked legal right by the terms of that lease, and that naked legal right is no right at all, because * * * you did not give affirmative testimony to show that she did give authority in writing, and the naked legal right, if there had been one, was under a contract with a party who had no right to make it." (R. p. 97.)

We regard the question as to whether appellee executed the last lease to the deceased Reifsnider as wholly immaterial in the light of the undisputed fact that the option for a renewal was, after the execution of the lease, interpolated by Hooper without proof of knowledge on the part of appellee or her assent thereto being secured. This litigation arises solely as to rights asserted under the interpolated renewal option clause. This clause was interpolated and void and the toll of the Statute of Frauds is its death knell. Possession under the lease did not operate to confer any right as to the void renewal clause. Mollitor v. Thom Van Co., 118 Ill. App. 293.

Appellant in his bill alleged that the lease was executed by appellee. This averment finds no support in the proof. The burden of proving this fact was assumed by appellant. It was material, and he cannot prevail in the absence of a discharge of such bur-

Rogan v. Arnold.

den.   Taylor v. Merrill, 55 Ill. 52; Adams & Westlake v. Westlake, 92 Ill. App. 615.

The evidence must support the material averments of the bill.  Coale v. Moline Plow Co., 134 Ill. 350.`

We do not think there is any sinister motive inferable from the fact that Hooper destroyed the lease which he took from Jesse W. Reifsnider in exchange for the lease of October 18, 1904, which he then delivered to him.  The whole purpose of the transaction was to substitute the new lease for the old, and Hooper, not being a lawyer but a doctor, could not appreciate the wisdom of preserving the old lease for future reference in the event of disputes arising, which, if he was honest—and we must, in the absence of proof to the contrary, believe he was—he surely had no cause to anticipate.  But there is nothing in the proof tending to impress the transaction with fraud on the part of Hooper.  He made no representations as to the contents of the new lease, nor used any artifice or subterfuge to prevent Reifsnider from familiarizing himself with its contents; nor was anything done or said by Hooper calculated to divert the mind of Reifsnider from the subject of the lease.  He had every opportunity to examine its contents, and failing so to do and retaining the same until the term had nearly expired without doing so, does not relieve him of the responsibility cast upon him by the law charging him with assent to its terms and estopping him nearly two years afterwards from pleading ignorance of its contents.   Appellant quotes from I Wigmore on Evidence, sec. 260, on the doctrine of presumption of knowledge of the contents of a document in the possession of a party, as follows:  "The possession of a document is an important and often the only circumstance to show that its possessor has, by reading it, become aware of its contents."  We accept this as a correct statement of the law, and we apply it to Reifsnider as estopping him and appellant both from disputing the fact of such knowledge which the law imputes to them.

Warren Reifsnider died intestate January 16, 1903. His son Jesse had been engaged in the conduct of his father's business with him for many years. Jesse was the only heir at law and his mother, the widow of his father. They were the only persons, aside from creditors, interested in the estate of Warren Reifsnider. The son, Jesse, carried on the business for himself and his mother, under the name of the father, continuously from the death of Warren Reifsnider until the mother took Nagle into the business as a partner, and they all continued the conduct of that business until the filing of the bill by appellant, a period of more than three years subsequent to Warren Reifsnider's death. The widow and the heir elected, as evidenced by their acts, to settle the estate of Warren Reifsnider without interposition of an administrator or recourse to the Probate Court. They paid all the debts of the deceased and retained all of the assets of his estate. Among such assets was the lease claimed by appellant to have been in the possession of the deceased at his death. This they surrendered and in its stead received another demise. This they had a right to do. They are bound by their actions, no creditors being heard to complain and no fraud proven tainting the transactions. They settled the estate as effectually as could have been done under the guidance of the Probate Court. Not until the lapse of over three years from the death of his intestate were letters of administration issued to appellant. At that date there was no estate to administer. It had been settled, the debts paid and all assets retained by the heir and widow of which they were in actual, undisturbed possession. No administration could be procured at the instance of the heirs who had settled the estate out of court. In the condition in which the estate of Warren Reifsnider was in March, 1906, no one but a creditor was entitled to invoke administration.

There were no assets to administer. The heirs had

accomplished that. The lease was not an asset. It had been surrendered. Even were it in existence as an asset, the administrator could not invoke a specific performance of an option of renewal. The only disposition he could make of it would be to sell it and distribute the proceeds under the direction of the Probate Court either in payment of proven debts, or to the widow and heir at law. The voluntary administration of the estate of the widow and heir is legalized by an amendment to section 18 of the Administration Act passed at the 1897 session of the Legislature (see p. 2 Session Laws 1897), and is as follows: "That when the heirs are resident of this State and the estate is solvent, and without minor heirs, and it is desired by the parties in interest to settle the estate without administration, this law shall not apply." The parties and the estate fulfilled all the requirements in this paragraph specified exempting the heirs from the operation of the Act and allowing them to settle the estate voluntarily without the aid of the court. This they did, and as there is no creditor complaining and no contention that the widow has any cause to complain or to be dissatisfied, or that she has been in any manner wronged or her interests affected to her detriment, the voluntary administration is binding upon her and Jesse, the heir. Bennett, Admr., v. Morris, 111 Ill. App. 150, is in accord with this holding.

In the view we take of the case made by the proofs, appellant is not entitled to maintain his bill and the learned chancellor was right when he dismissed it for want of equity, and the decree of the Superior Court so ordering is consequently affirmed.

*Affirmed.*